UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS, <br><br> Plaintiff, <br><br> v. <br><br> LASHWAY LUMBER, INC. and LASHWAY LOGGING, INC., <br><br> Defendants. | Case No. 1:19-cv-12135 |

**CONSENT DECREE**

WHEREAS, Lashway Lumber, Inc. ("Lashway Lumber") operates a timber products facility at and around 22 Main Street, Williamsburg, Massachusetts (the "Lashway Lumber Facility"), and Lashway Logging, Inc. ("Lashway Logging") operates a timber products facility at and around 59 and 67 Main Street, Williamsburg, Massachusetts (the "Lashway Logging Facility") (together, the "Facilities");

WHEREAS, the Commonwealth of Massachusetts ("Commonwealth"), acting through the Office of the Attorney General ("Attorney General's Office"), alleges in its Complaint that Lashway Lumber and Lashway Logging (each occasionally referred to as a "Lashway Company" or jointly referred to as the "Lashway Companies") have discharged industrial stormwater into the Mill River and/or its associated creeks and wetlands without obtaining and complying with a federal stormwater permit issued by the United States Environmental Protection Agency ("Stormwater Permit"), in violation of the Federal Clean Water Act, 33 U.S.C. § 1311(a);

1

WHEREAS, on March 12, 2019, the Attorney General's Office provided notice of the alleged violations and of the Attorney General's Office's intention to file suit against the Lashway Companies to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region I; the Massachusetts Department of Environmental Protection; and to the Lashway Companies, pursuant to Section 505 of the Federal Clean Water Act, 33 U.S.C. § 1365;

WHEREAS, today the Attorney General filed a Complaint against the Lashway Companies in the United States District Court, District of Massachusetts;

WHEREAS, following receipt of the March 12, 2019 Notice, the Lashway Companies have taken certain steps, including retaining Tighe & Bond, a third-party consulting firm, to investigate the alleged violations and to develop and implement plans to obtain coverage under the Stormwater Permit, and to properly control and monitor stormwater pollutant discharges from the Facilities;

WHEREAS, the Lashway Companies anticipate that these steps, together with implementation of the measures set forth herein, and in each of the Lashway Companies' Stormwater Pollution Prevention Plans ("SWPPPs") for its Facility, will enable them to comply with the requirements of the Federal Clean Water Act;

WHEREAS, the Attorney General's Office and the Lashway Companies have reached an agreement to resolve the litigation; and

WHEREAS, this Consent Decree shall be submitted to the United States Department of Justice for the 45-day statutory review period, pursuant to 33 U.S.C. § 1365(c).

NOW THEREFORE, based on the Joint Motion of the Parties for Entry of this Consent Decree, and before taking any testimony and without the adjudication of any issue of fact or law

2

except as provided in Section I (Jurisdiction and Venue), it is ADJUDGED, ORDERED AND DECREED, as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over the parties and the subject matter of this action pursuant to Section 505(a)(1)(A) of the Federal Clean Water Act, 33 U.S.C. § 1365(a)(1)(A), and 28 U.S.C. § 1331 (an action arising under the laws of the United States).

2. Venue is proper in the District of Massachusetts pursuant to Section 505(c)(1) of the Federal Clean Water Act, 33 U.S.C. § 1365(c)(1).

3. The Complaint alleges facts that, if proven, would constitute good and sufficient grounds for the relief set forth in this Consent Decree.

## III. EFFECTIVE DATE

4. The effective date of this Consent Decree ("Effective Date") shall be when the Court enters the Consent Decree on the docket.

## II. PARTIES BOUND

5. This Consent Decree shall constitute a binding agreement between the parties, and the Lashway Companies consent to its entry as a final judgment by the Court and waive all rights of appeal upon its entry on the docket. If the Court declines to enter this Consent Decree on any ground except one related to form, this Consent Decree is voidable at the option of any party within fourteen (14) days of the Court's decision. If, on the other hand, the Court determines that substantive modifications to this Consent Decree are necessary prior to the Court's entry of it, the parties shall enter into good faith negotiations to discuss the modifications, and this Consent Decree shall be void unless the Commonwealth and each of the Lashway Companies agree otherwise in writing within fourteen (14) days of the Court's decision.

6. The provisions of this Consent Decree shall apply to and bind the Lashway Companies, and any person or entity acting by, for, or through the Lashway Companies, including the Lashway Companies' managers, directors, officers, supervisors, employees, agents, servants, attorneys-in-fact, successors, and assigns, and those persons in active concert or participation with either of the Lashway Companies who receive notice of this Consent Decree.

7. Each of the Lashway Companies shall provide a true copy of this Consent Decree to all of its managers, directors, officers, supervisors, employees, and agents whose duties might include compliance with any provision of this Consent Decree. Each of the Lashway Companies shall also provide a copy of this Consent Decree to any contractor retained by it to perform work required under this Consent Decree, and shall condition any such contract on the contractor's performance of the work in compliance with the terms of this Consent Decree.

8. For three (3) years following the Effective Date, no change or transfer in ownership, management, or operation of the Lashway Lumber Facility and/or the Lashway Logging Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve either Lashway Company or its managers, officers, directors, agents, and/or servants of any obligation under this Consent Decree. At least thirty (30) days prior to any such change or transfer of ownership, management, or operation of a Lashway Company Facility that occurs within three (3) years of the Effective Date, the Lashway Company engaged in such change or transfer shall provide a copy of this Consent Decree to the proposed transferee or new manager or operator and shall simultaneously provide written notice of the prospective change or transfer in ownership, management, or operation of the Facility, together with a copy of the proposed written change or transfer agreement, to the Attorney General's Office in accordance with Section XI (Notice) of this

Consent Decree. Any attempt to change or transfer ownership, management, or operation of the Facility without complying with this Paragraph shall constitute a violation of this Consent Decree.

9.      The Lashway Companies shall not violate this Consent Decree, and the Lashway Companies shall not allow their officers, directors, agents, servants, attorneys-in-fact, employees, successors, assigns, or contractors to violate this Consent Decree. In any action to enforce this Consent Decree, the Lashway Companies shall not raise as a defense the failure by any of its managers, directors, officers, supervisors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

10.     In addition to any relief specifically provided in this Consent Decree, the Lashway Companies understand and agree that violations of this Consent Decree may be punishable by contempt pursuant to an appropriate civil contempt proceeding.

11.     Each Lashway Company is responsible for only its own, and not the other's, obligations under this Consent Decree.

## IV. PAYMENTS

### *Payments by Lashway Lumber*

12.     Within fifteen (15) days of the Effective Date, Lashway Lumber shall pay to the Connecticut River Conservancy, as fiscal sponsor for the Mill River Greenway Initiative, the sum of fifteen thousand dollars ($15,000) to fund the design and engineering of the Williamsburg Mill River Greenway (the "Greenway Payment"). Lashway Lumber's Greenway Payment shall be made by certified check, treasurer's check, or bank check and sent to Andrew Fisk, Executive Director, Connecticut River Conservancy, 15 Bank Row, Greenfield, MA 01301. Evidence of Lashway Lumber's payment to the Connecticut River Conservancy shall be contemporaneously mailed by Lashway Lumber to the Commonwealth.

13.     Within fifteen (15) days of the Effective Date, Lashway Lumber shall reimburse the Attorney General's Office in the amount of $12,500 to defray the Attorney General's Office's costs, including attorney fees, incurred in connection with its work on this matter. Payments shall be made by certified check payable to the Commonwealth of Massachusetts and sent to the Attorney General's Office in accordance with Section XI (Notices). The check shall include on its face the following information: Commonwealth v. Lashway Lumber - Costs and Attorney Fees.

*Payments by Lashway Logging*

14.     Within fifteen (15) days of the Effective Date, Lashway Logging shall pay to the Connecticut River Conservancy, as fiscal sponsor for the Mill River Greenway Initiative, the sum of fifteen thousand dollars ($15,000) to fund the design and engineering of the Williamsburg Mill River Greenway (the "Greenway Payment"). Lashway Logging's Greenway Payment shall be made by certified check, treasurer's check or bank check and sent to Andrew Fisk, Executive Director, Connecticut River Conservancy, 15 Bank Row, Greenfield, MA 01301. Evidence of Lashway Logging's payment to the Connecticut River Conservancy shall be contemporaneously mailed by Lashway Logging to the Commonwealth.

15.     Within fifteen (15) days of the Effective Date, Lashway Logging shall reimburse the Attorney General's Office in the amount of $12,500 to defray the Attorney General's Office's costs, including attorney fees, incurred in connection with its work on this matter. Payments shall be made by certified check payable to the Commonwealth of Massachusetts and sent to the Attorney General's Office in accordance with Section XI (Notice). The check shall include on its face the following information: Commonwealth v. Lashway Logging - Costs and Attorney Fees.

## V. INJUNCTIVE RELIEF

16. Lashway Lumber agrees to operate the Lashway Lumber Facility in compliance with the applicable requirements of the Stormwater Permit, including any amendments thereto, and with the Federal Clean Water Act. Lashway Logging agrees to operate the Lashway Logging Facility in compliance with the applicable requirements of the Stormwater Permit, including any amendments thereto, and with the Federal Clean Water Act.

17. <u>Industrial Stormwater</u>

    a. *Improved Pollutant Reduction Measures*. Lashway Lumber will direct and properly control stormwater at the Lashway Lumber Facility to minimize pollutants in stormwater discharges from the Lashway Lumber Facility. Lashway Logging will direct and properly control stormwater at the Lashway Logging Facility to minimize pollutants in stormwater discharges from the Lashway Logging Facility. Specifically, each Lashway Company will take the following actions by the following dates:

        i. By the Effective Date, each Lashway Company will direct stormwater at its respective Facility, including stormwater discharged into all catch basins, but excluding stormwater that infiltrates into the ground, to appropriate stormwater controls in accordance with the Stormwater Permit prior to its discharge to the Mill River and/or to the Mill River's associated wetlands or tributaries.

        ii. By the Effective Date, each Lashway Company will prevent stormwater discharges to the Mill River and/or to the Mill River's

associated wetlands or creeks from its respective Facility that are not in accordance with the Stormwater Permit.

b.  *Improved Compliance Monitoring.* As of the Effective Date, Lashway Lumber will ensure representative sampling of stormwater discharged from the Lashway Lumber Facility and Lashway Logging will ensure representative sampling of stormwater discharged from the Lashway Logging Facility. Each Lashway Company will ensure representative sampling at its respective Facility by:

   i.  Monitoring its stormwater discharges in accordance with applicable provisions of Section 6 of the Stormwater Permit, and Appendix B, Section B-10 of the Stormwater Permit.

   ii.  Following the procedures set forth in EPA's Industrial Storm Water Monitoring and Sampling Guide (March 2009), or any applicable updated EPA guidance on industrial stormwater monitoring and sampling.

   iii.  Preparing video recordings of the sampling taken for the first quarter after the Effective Date, and then photographs of sampling taken for the second and third quarters after the Effective Date and providing the Attorney General's Office with copies of such video recordings and photographs in accordance with Paragraph 19(g) and Section XI (Notices), below. The video recordings and photographs shall include an accurate record of the time and date on which they were

8

recorded/taken. Each video and set of photographs shall make clear and evident, through visual imagery

    (a)   the date and time on which it was recorded/taken,

    (b)   the location or locations at which it was recorded/taken,

    (c)   the persons present during the sampling,

    (d)   the location of the pipe or conduit being sampled from,

    (e)   the manner in which each sample is taken, and

    (f)   the sample or samples taken.

If the video imagery or photographs are insufficient to verify items (a)-(f) above, then the Attorney General's Office will have the right to be present during or require the video recording or photographing of another representative sampling event in a subsequent calendar quarter of its choosing.

## VI. FACILITY ACCESS AND SUBMISSION OF RECORDS

18.    Each Lashway Company shall permit the Attorney General's Office to visit its respective Facility during normal daylight business hours during each year for the three (3) years following the Effective Date, provided that the Attorney General's Office provide at least seventy-two (72) hours of prior notice. During any site visit, the Attorney General's Office shall have access to and permission to copy any documentation required to be kept on site by the Stormwater Permit and may collect samples and take photos at the Facility.

19.    For a period of three (3) years following the Effective Date, each Lashway Company shall provide the Attorney General's Office with the following documents in accordance with Section XI (Notices), below:

a. Copies of all documents the Lashway Company submits to EPA, the Commonwealth of Massachusetts, and/or the Town of Williamsburg concerning the Lashway Facility's stormwater controls or the quality of the Lashway Facility's stormwater discharges, including but not limited to all documents and reports submitted as required by the Stormwater Permit. Such documents and reports shall be sent to the Attorney General's Office on the same day that they are submitted to the governmental entity.

c. All maintenance records for its stormwater pollution control systems. Maintenance records will be provided within ten (10) business days of the Lashway Company's receipt of a written request by the Attorney General's Office.

d. Timely written notice of any planned or completed changes to the company's stormwater control measures, with dates of anticipated or completed changes.

e. Current copies of the Lashway Company's SWPPP within seven (7) business days of a request by the Attorney General's Office.

f. Laboratory reports and analytical results of stormwater sampling performed by or for the Lashway Company, within ten (10) business days of receiving the reports.

g. Video recordings of the first quarterly monitoring event after the Effective Date and then photographs of the next two quarterly monitoring events after the Effective Date prepared in accordance with Paragraph 17(b)(iii), above, at the same time that the corresponding laboratory reports and analytical results for the samples are provided (see Paragraph 19(f), above). All Quarterly

Visual Inspection Forms and Routine Facility Inspection Forms, including laboratory results for the samples, shall be submitted to the Attorney General's Office with the Annual Report required pursuant to the Stormwater Permit.

20.     Any information provided by either Lashway Company or acquired by the Attorney General's Office pursuant to this Consent Decree may be used by the Commonwealth in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

21.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the Commonwealth of Massachusetts or any of its branches, departments, agencies, or offices pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of either Lashway Company to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## VIII. INTEREST AND COLLECTIONS

22.     If any payment required pursuant to this Consent Decree is late or not made, the Lashway Companies shall pay interest on any overdue amount for the period of such nonpayment at the rate of twelve percent (12%) per annum pursuant to G.L. c. 231, § 6B, computed monthly, and shall pay all expenses associated with collection by the Commonwealth of the unpaid amounts and interest for any period of nonpayment after the payment obligation becomes due, including reasonable attorney fees.

## IX. EFFECT OF CONSENT DECREE

23.     Upon compliance by Lashway Lumber with the requirements of this Consent Decree, (a) this Consent Decree shall resolve Lashway Lumber's liability for the specific legal claims alleged against it in the Complaint, and (b) the Commonwealth shall release Lashway

11

Lumber for liability for the specific legal claims alleged against it in the Complaint. Notwithstanding the foregoing, the Commonwealth expressly reserves all claims for injunctive relief for violations of all of the statutes and regulations referred to in this Consent Decree, whether related to the specific legal claims resolved by this Consent Decree or otherwise.

24.     Upon compliance by Lashway Logging with the requirements of this Consent Decree, (a) this Consent Decree shall resolve Lashway Logging for the specific legal claims alleged against it in the Complaint, and (b) the Commonwealth shall release Lashway Logging for liability for the specific legal claims alleged against it in the Complaint. Notwithstanding the foregoing, the Commonwealth expressly reserves all claims for injunctive relief for violations of all of the statutes and regulations referred to in this Consent Decree, whether related to the specific legal claims resolved by this Consent Decree or otherwise.

25.     Nothing in this Consent Decree (a) shall bar any action by the Commonwealth on any legal claim not specifically pleaded in the Complaint or for any violations not revealed to the Commonwealth; (b) shall be deemed to excuse non-compliance by either Lashway Company or any of the persons or entities otherwise bound by this Consent Decree with any law or regulation; or (c) shall preclude a separate or ancillary action by the Commonwealth to enforce the terms of this Consent Decree or any permit or other approval issued by the Massachusetts Department of Environmental Protection or EPA relative to the Facility.

26.     This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. Each Lashway Company is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and the Lashway Companies' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set

forth herein. The Attorney General's Office does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that the Lashway Companies' compliance with any aspect of this Consent Decree will result in compliance with provisions any federal, state, or local law, regulation, or permit.

27. Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a party to this Decree.

## X. MISCELLANEOUS

28. The Lashway Companies understand and agree that, pursuant to 11 U.S.C. § 523(a)(7), the costs or sums that the Lashway Companies may be required to pay under this Consent Decree are not subject to discharge in any bankruptcy.

29. Each Lashway Company shall pay all expenses, including reasonable attorneys' fees and costs, incurred by the Commonwealth in the enforcement of this Consent Decree against it. This Paragraph does not apply to expenses incurred by the Commonwealth to monitor the Lashway Companies' compliance with this Consent Decree.

30. Nothing in this Consent Decree shall prevent either Lashway Company from taking any action otherwise required by law.

31. The titles in this Consent Decree have no independent legal significance and are used merely for the convenience of the Parties.

32. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or State or Federal holiday, the period shall run until the close of business of the next Business Day.

33. Signatures of the parties transmitted by scanning and email are binding.

## XI. NOTICES

34.      Unless otherwise specified in this Consent Decree, notices and submissions required by this Decree shall be made in writing by email to the following addresses:

For the Attorney General's Office and the Commonwealth:

Nora J. Chorover
Special Assistant Attorney General
Environmental Protection Division
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Nora.chorover@mass.gov

For Lashway Logging:

William Lashway, Jr., President
Lashway Logging, Inc.
P.O. Box 231
67 Main Street
Williamsburg, MA 01096
wjl3@comcast.net

For Lashway Lumber:

Lawrence L. Lashway, II, President
Lashway Lumber, Inc.
P.O. Box 768
22 Main Street
Williamsburg, MA 01096
laura@lashwayusa.com

or, to such other place or to the attention of such other individual as a Party may from time to time designate by written notice to the other Party to this Consent Decree.

## XII. INTEGRATION

35.      Except as expressly set forth in this Consent Decree, this Consent Decree sets forth all of the obligations of the parties and represents the complete and exclusive statement of the parties with respect to the terms of the settlement agreement embodied by this Consent Decree; any

14

other representations, communications, or agreements by or between the parties shall have no force and effect.

## XIII. MODIFICATION

36.     The terms of this Consent Decree may be modified only by a subsequent written agreement signed by the parties. Where the modification constitutes a material change to any term of this Consent Decree, it shall be effective only by written approval of the parties and the approval of the Court. The Commonwealth's decision to extend a deadline in this Consent Decree shall not constitute a material change for purposes of this Paragraph.

## XIV. AUTHORITY OF SIGNATORY

37.     The person signing this Consent Decree on behalf of Lashway Lumber acknowledges: (a) that he or she has personally read and understands each of the numbered Paragraphs of this Consent Decree, including any Appendices attached to it; (b) that, to the extent necessary, Lashway Lumber's managers, directors, officers, and shareholders have consented to Lashway Lumber entering into this Consent Decree and to its entry as a Final Judgment; and (c) that he or she is authorized to sign and bind Lashway Lumber to the terms of this Consent Decree.

38.     The person signing this Consent Decree on behalf of Lashway Logging acknowledges: (a) that he or she has personally read and understands each of the numbered Paragraphs of this Consent Decree, including any Appendices attached to it; (b) that, to the extent necessary, Lashway Logging's managers, directors, officers, and shareholders have consented to Lashway Logging entering into this Consent Decree and to its entry as a Final Judgment; and (c) that he or she is authorized to sign and bind Lashway Logging to the terms of this Consent Decree.

15

## XV. RETENTION OF JURISDICTION

39.     The Court shall retain jurisdiction over this case for purposes of resolving disputes that arise under this Consent Decree, entering orders modifying this Consent Decree, or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVI. FINAL JUDGMENT

40.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a Final Judgment of the Court.

Office of the Attorney General

By:     _Nora J. Chorover ,SAAG     Dated: October 11, 2019

Lashway Lumber, Inc.

By:     _____     Dated: _____

_____

Lashway Logging, Inc.

By:     _____     Dated: _____

_____

IT IS SO ORDERED. JUDGMENT is hereby entered in accordance with the foregoing.

By the Court:

_____
United States District Court

Dated:     __12_/_31_/_19_____

16

10/10/2019  14:36    14132683030

PAGE  02/02

## XV. RETENTION OF JURISDICTION

39.     The Court shall retain jurisdiction over this case for purposes of resolving disputes that arise under this Consent Decree, entering orders modifying this Consent Decree, or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVI. FINAL JUDGMENT

40.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a Final Judgment of the Court.

Office of the Attorney General

By: _____     Dated: _____

_____

Lashway Lumber, Inc.

By: _____     Dated: _____

_____

Lashway Logging, Inc.

By: _____     Dated: _10/10/19_

WILLIAM LASHWAY, JR.

_____

IT IS SO ORDERED. JUDGMENT is hereby entered in accordance with the foregoing.

By the Court:

_____

United States District Court

Dated: _____

16

## XV. RETENTION OF JURISDICTION

39.    The Court shall retain jurisdiction over this case for purposes of resolving disputes that arise under this Consent Decree, entering orders modifying this Consent Decree, or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVI. FINAL JUDGMENT

40.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a Final Judgment of the Court.

Office of the Attorney General

By: _____ Dated: _____

_____

Lashway Lumber, Inc.

By: _~Lawrence Lashway~_ Dated: __10/2/19__

__Lawrence L. Lashway II, President__

Lashway Logging, Inc.

By: _____ Dated: _____

_____

IT IS SO ORDERED. JUDGMENT is hereby entered in accordance with the foregoing.

By the Court:

_____

United States District Court

Dated: _____

16